**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANILO MERA, *on behalf of himself,* *FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>THE GREEN ROLL NYC INC d/b/a WILLOW, BEYOND SUSHI INC d/b/a ANIXI, BS 37 LLC d/b/a BEYOND SUSHI, BEYOND SUSHI NYC INC d/b/a BEYOND SUSHI, BS PINE LLC d/b/a COLETTA, BS MULBERRY LLC d/b/a/ SENTIR, CR UNION LLC d/b/a LE BASQUE, GUY VAKNIN, and JOHN DOE ENTITIES 1-5,<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

     Plaintiff DANILO MERA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants THE GREEN ROLL NYC INC d/b/a WILLOW, BEYOND SUSHI INC d/b/a ANIXI, BS 37 LLC d/b/a BEYOND SUSHI, BEYOND SUSHI NYC INC d/b/a BEYOND SUSHI, BS PINE LLC d/b/a COLETTA, BS MULBERRY LLC d/b/a/ SENTIR, CR UNION LLC d/b/a LE BASQUE, and JOHN DOE ENTITIES 1-5 ("Corporate Defendants"), and GUY

1

VAKNIN (the "Individual Defendant," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit; (2) unpaid tips due to tip retention; (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff additionally alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants, (1) unpaid minimum wages; (2) unpaid wages, including overtime, due to an invalid tip credit; (3) unpaid tips due to tip retention; (4) unpaid spread of hours premiums; (5) statutory penalties; (6) liquidated damages; and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      Defendants are subject to personal jurisdiction in this judicial district.

4.      This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.      Plaintiff DANILO MERA is a resident of Essex County, New Jersey.

7.      Throughout the relevant period, Defendants collectively owned and operated an enterprise of eight (8) restaurants throughout New York City under the umbrella of "City Roots Hospitality Group" at the following locations:

    i.      Willow Vegan Bistro - 199 8th Ave, New York, NY 10011;

    ii.      Anixi - 290 8th Ave, New York, NY 10001;

    iii.     Beyond Sushi (37th Street) - 134 W 37th St, New York, NY 10018

    iv.     Beyond Sushi (56th Street) - 62 W 56th St, New York, NY 10019;

    v.      Beyond Sushi Union Square (now closed) - 229 East 14th Street New York, NY, 10003;

    vi.     Coletta - 365 3rd Avenue, New York, NY 10016;

    vii.    Sentir - 37 W 19th St, New York, NY 10011; and

    viii.   Le Basque - 15 Union Square West, New York, NY 10003.

(collectively, the "Restaurants").

8.    Corporate Defendant THE GREEN ROLL NYC INC d/b/a WILLOW is a domestic business corporation organized under the laws of the State of New York. Corporate Defendant THE GREEN ROLL NYC INC d/b/a WILLOW currently owns and operates "Willow," or "Willow Vegan Bistro" located at 199 8th Ave, New York, NY 10011.

9.    Corporate Defendant BEYOND SUSHI INC d/b/a ANIXI is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 290 8th Ave, New York, NY 10001. Corporate Defendant BEYOND SUSHI INC d/b/a ANIXI owns and operates "Anixi" located at 290 8th Ave, New York, NY 10001.

10.    Corporate Defendant BS 37 LLC d/b/a BEYOND SUSHI is a domestic limited liability company authorized to conduct business in the state of New York, with a principal place of business located at 134 W 37th St, New York, NY 10018. Corporate Defendant BS 37 LLC d/b/a BEYOND SUSHI owns and operates "Beyond Sushi (37th Street)" located at 134 W 37th St, New York, NY 10018.

11.    Corporate Defendant BEYOND SUSHI NYC INC d/b/a BEYOND SUSHI is a domestic business corporation authorized to conduct business in the state of New York, with a

principal place of business located at 62 W 56th St, New York, NY 10019. Corporate Defendant BEYOND SUSHI NYC INC d/b/a BEYOND SUSHI owns and operates "Beyond Sushi (56th Street)" located at 62 W 56th St, New York, NY 10019.

12.    At all times relevant herein, Defendants JOHN DOE ENTITIES 1-5 are business entities of unknown citizenship, which upon information and belief had their principal places of business located at 229 East 14th Street New York, NY 10003 and owned and operated "Beyond Sushi (Union Square)" during the relevant period. The John Does are other business entities affiliated with Defendants' enterprise, the exact number and identities of which are not presently known.

13.    Corporate Defendant BS PINE LLC d/b/a COLETTA is a domestic limited liability company authorized to conduct business in the state of New York, with a principal place of business located at 365 3rd Avenue, New York, NY 10016. Corporate Defendant BS PINE LLC d/b/a COLETTA owns and operates "Coletta" located at 365 3rd Avenue, New York, NY 10016.

14.    Corporate Defendant BS MULBERRY LLC d/b/a/ SENTIR is a domestic limited liability company authorized to conduct business in the state of New York, with a principal place of business located at 37 W 19th St, New York, NY 10011. Corporate Defendant BS MULBERRY LLC d/b/a/ SENTIR owns and operates "Sentir" located at 37 W 19th St, New York, NY 10011.

15.    Corporate Defendant CR UNION LLC d/b/a LE BASQUE is a domestic limited liability company authorized to conduct business in the state of New York, with a principal place of business located at 15 Union Square West, New York, NY 10003. Corporate DEFENDANT CR UNION LLC d/b/a LE BASQUE owns and operates "Le Basque" located at 15 Union Square West, New York, NY 10003.

16.    Individual Defendant GUY VAKNIN is the founder and co-owner of Corporate Defendants and the Restaurants. GUY VAKNIN exercised control over the employment terms and

conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. GUY VAKNIN had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. GUY VAKNIN exercised functional control over the business and financial operations of Corporate Defendants. GUY VAKNIN ensured that the business is operating efficiently and profitably.

17.    At all relevant times, the Restaurants were operated by the Defendants as a single integrated enterprise. Specifically, the Restaurants engaged in related activities, share common ownership, and have a common business purpose:

a)    All the Corporate Defendants were operated and advertised under the same umbrella "City Roots Hospitality Group." Individual Defendant GUY VAKNIN directly or indirectly owns all the Corporate Defendants. *See* **Exhibit A.** (https://cityrootsnyc.com/), **Exhibit B** (https://cityrootsnyc.com/about-guy/);

b)    Defendants have the same management team for all the Restaurants. *See* **Exhibit C**, Meet The Team page (https://cityrootsnyc.com/our-team/);

c)    Defendants jointly advertise careers for all the Restaurants, offered the same benefits and career opportunities that span throughout City Roots Hospitality Group and all Restaurants to employees of any Restaurant. *See* **Exhibit D**, Defendants' job listing for positions at various locations. (https://culinaryagents.com/groups/1677-City-Roots-Hospitality); **Exhibit E**, Defendants' job listing for Experienced Restaurant Server, listing City Roots and multiple Restaurants, including Willow, Beyond Sushi, Coletta.

d)    Defendants utilize a centralized human resources and labor relations system, whereby a single employee, a Recruiting Coordinator, oversees the development,

implementation, and evaluation of training programs across all the Restaurants. *See* **Exhibit C**, Meet The Team page; **Exhibit F**, Defendants' Hiring & Training Director's LinkedIn.

e) Defendants admit on their website that "Under Chef Guy's leadership, City Roots Hospitality launched its first establishment, "Beyond Sushi" . . . As the success of Beyond Sushi flourished with several locations across New York City, Chef Guy's vision expanded and blossomed into a multi-restaurant group, each venue distinct yet unified by a shared commitment to sustainability and excellence." "*Willow* is a cozy vegan bistro located in the heart of Chelsea that elevates the concept of comfort American cuisine. Gramercy houses *Coletta*, an intimate restaurant that reinvents traditional Italian classics with a deep respect for culinary heritage. *Anixi* is a lively Mediterranean brasserie that features vibrant flavors from Greece, Turkey, and Lebanon. *Sentir* is a culinary journey through Mexico in the Flatiron district. His latest restaurant *Le Basque* is an upscale restaurant in Union Square that blends the culinary traditions of France and Spain inspired by the Basque region." *See* **Exhibit G**. This reveals that, at all relevant times, Individual Defendant GUY VAKNIN oversaw all the Restaurants.

f) At all relevant times, Defendants utilized centralized administration functions and had centralized payroll, Human Resources, HR manuals, public relations, and accounting departments that serviced all the Restaurants.

g) At all relevant times, Defendants transferred supplies and ingredients between the Restaurants when needed.

h) At all relevant times, Defendants transferred employees between the Restaurants when needed.

18.     At all relevant times, each Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

19.     At all relevant times, each Defendant was an "employer" and "person" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

20.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt tipped employees (including, but not limited to, food runners, servers, bussers, bartenders, porters, kitchen staffs, cooks, and the like) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages due to (1) improper tip credit deductions, and (2) invalid tip retention.

23.     The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

24.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, food runners, bussers, servers, bartenders, porters, kitchen staffs, cooks, and the like) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members").

26.    All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

28.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (1) unpaid minimum wages, (2) failing to pay proper

spread of hour premiums for shifts exceeding ten hours in a day, (3) failing to provide proper wage statements, and (4) failing to provide proper wage and hour notices. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     With regard to Plaintiff and the Tipped Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of (1) improper tip credit deductions, and (2) improper tip retention. Defendants failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) caused tipped employees to in non-tipped duties for more than 30 consecutive minutes; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

30.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where

individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.    These are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendants employed Plaintiff and the Class Members within the meaning of the New York law;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e.    Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members the prevailing minimum wage;

f.    Whether Defendants paid Plaintiff and Class Members the proper wages for all hours worked;

g.    Whether Defendants properly provided notice to Plaintiff and Tipped Subclass that Defendants were taking a tip credit;

h.    Whether Defendants improperly withheld tips from Plaintiff and Tipped Subclass by illegally retaining portions of tips and surcharges earned by Plaintiff and Tipped Subclass;

i.    Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

j.    Whether Defendants required Plaintiff and Tipped Subclass to engage in non-tipped duties exceeding 20% of each workweek;

k.  Whether Defendants required Plaintiff and Tipped Subclass to engage in non-tipped duties for continuous periods of time exceeding thirty (30) minutes;

l.  Whether Defendants properly paid Plaintiff and Class Members with spread of hour premiums for shifts worked in excess of ten (10) hours per working day;

m.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

n.  Whether Defendants provided proper wage statements informing (i) Plaintiff and Tipped Subclass of the amount of tip credit taken for each payment period, and (ii) of information required to be provided on wage statements under the New York Labor Law; and

o.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

## **STATEMENT OF FACTS**

i.  *Plaintiff's Employment Background*

34.  In or about February 2024, Plaintiff DANILO MERA was hired by Defendants to work as a busboy and runner for Defendants' Willow Vegan Bistro restaurant located at 199 8th Ave, New York, NY 10011.  Plaintiff worked for Defendants until or about February 2025.

35.  Throughout his employment, Plaintiff was compensated by Defendants at the tip credit rate, $10.00 per hour, which was below the prevailing tip credit minimum wage rate.

36.  From the start until around October 2024, Plaintiff was scheduled by Defendants to work four (4) days per week, from 4:00 p.m. to 11:00 p.m. on Wednesdays and Thursdays, from 11:00 a.m. to 11:00 p.m. on Saturdays, and from 11:00 a.m. to 12:00 a.m. on Sundays. During this period, Plaintiff was scheduled to work thirty-nine (39) hours per week.

37.     From around October 2024 to the end of his employment, Plaintiff was scheduled by Defendants to work four (4) days per week, from 6:00 p.m. to 12:00 a.m. on Wednesdays, Saturdays, and Sundays, and from 5:00 p.m. to 12:00 a.m. on Thursdays. Plaintiff was scheduled to work twenty-five (25) hours per week.

ii.     *Plaintiff's Unpaid Minimum Wage Claim*

38.     At all times, Plaintiff was paid below the prevailing minimum wage that Plaintiff was entitled to. Defendants compensated Plaintiff at the tip credit hourly rate of $10.00. In 2024, the tip credit allowance in New York City was $5.35, and the prevailing minimum wage is $16.00. In 2025, the tip credit allowance in New York City is $5.50, and the prevailing minimum wage is $16.50.  Even if the tip credit that Defendants took from Plaintiff's wages was valid (which was not, as detailed below), Plaintiff was still paid below the prevailing minimum wage.  In fact, in 2024 and 2025, Defendants still paid Plaintiff at the minimum wage of 2023. Class Members were similarly compensated below the prevailing minimum wage and at the outdated minimum wage rate.

iii.     *Plaintiff's Tip Retention Claim*

39.     Throughout his employment, Defendants and/or their management directly retained tips from Plaintiff, FLSA Collective Plaintiffs and Class Members.

40.     Defendants illegally retained tips earned by Plaintiff and Tipped Subclass. Plaintiff and Tipped Subclass would always get similar amount of tips regardless of how busy or slow the business was. In attempts to validify whether or not his tip amounts were accurate, Plaintiff complained to Defendants and requested to see the tip sheets numerous times. However, Defendants always refused to provide tip sheets and always brushed him off with "I'll look into it," but never got back to Plaintiff.

41.     Defendants knowingly and willfully operated their business with a policy of retaining portions of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' tips.

iv.     *Plaintiff's Invalid Tip Credit Deductions Claim*

42.     At all relevant times, Defendants improperly deducted tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages for all hours worked.

43.     Defendants were not entitled to claim any tip credits allowance from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages under the FLSA and the NYLL because Defendants: (i) failed to properly provide them with tip credit notice at their dates of hiring and annually thereafter; (ii) deducted tip credits for all hours worked despite having caused them to engage in non-tipped duties for hours exceeding twenty percent of the total hours worked each workweek; (iii) deducted tip credits for all hours worked despite requiring them to engage in non-tipped side-work for continuous periods of time exceeding thirty (30) minutes; (iv) illegally retained tips from them, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

44.     Defendants required Plaintiff to engage more than twenty percent of his working time performing non-tipped related activities, such as (i) sweeping and mopping, (ii) cleaning the restaurant, (iii) cleaning the bathroom, (iv) taking out garbage, (v) polishing silverware, glassware, and dishware, which took one (1) to two (2) hours per workday. Additionally, Plaintiff was required to do the work that was part of the job duties of non-tipped employees such as hostesses, which took him an extra one (1) to two (2) hours per workday. In total, Plaintiff was required spend two (2) to four (4) hours performing non-tipped related activities, consisting of more than twenty percent of the total hours worked each shift. Similarly, Defendants required FLSA Collective Plaintiffs and Class Members to engage in similar non-tipped duties for similar amounts of time. Even though Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to

engage in non-tipped activities in excess of two hours or twenty percent of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

45.    Additionally, Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes. Prior to October 2024, Plaintiff's shift started at 4:00 P.M. As the Restaurant did not open to customers until 4:30 P.M. Plaintiff was required to spend at least thirty minutes doing non-tipped work. Additionally, Plaintiff, FLSA Collective Plaintiffs, and Class Members were required by Defendants to stay for another thirty minutes performing non-tipped closing duties after the Restaurant closed. As such, Defendants were not entitled to claim tip credit for these periods of time which Plaintiff, FLAS Collective Plaintiffs and Class Members engaged in non-tipped side-work continuously for over 30 minutes per period.

46.    Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages.

*v.    Plaintiff's Unpaid Spread of Hours Claim*

47.    At all relevant times, Defendants failed to compensate all spread of hours premiums to Plaintiff and Class Members for all workdays with a spread of ten or more hours, in violation of the NYLL.

48.    From the start of his employment until October 2024, Plaintiff was always required to work workdays with a spread of ten or more hours. Defendants failed to compensate spread of hours premiums for these days.

49.    Defendants similarly failed to compensate Class Members spread of hours premiums for workdays with a spread of ten or more hours.

vi.   *Plaintiff's WTPA Violations Claim*

50.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to provide Plaintiff and Class Members with proper pay stubs reflecting the actual number of hours worked they worked. Additionally, Defendants also failed to provide Plaintiff and Tipped Subclass with proper pay stubs reflecting the tip credit claimed for each pay period.

51.   At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants.

52.   In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

53.   In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

54.      Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

55.      Had Defendants provided any wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked and their proper pay rates, as required by law, Defendants would have had to either (a) increase employees' wages to correspond to the hours they actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

56.      The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

57.      The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct

effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

58.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

59.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

60.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants were supposed to submit to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

61.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

62.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants failed to report their income, and how Defendants failed to report employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

63.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

64.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

65.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants failed to report their actual wages to the IRS. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as Defendants failed to send her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

66.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

67.     As a direct and proximate result of Defendants' retaliation against Plaintiff, Plaintiff suffered from loss of future earnings.

68.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

69.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

70.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

71.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

72.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

73.     Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount of hours worked. Defendants were not entitled to take any tip credits under the FLSA.

74.     At all relevant times, Defendants had a policy and practice of unlawfully retaining the tips of Plaintiff and FLSA Collective Plaintiffs. Defendants showed a willful disregard for the provisions of the FLSA by instituting a tip pooling scheme where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiff and tipped employees their respective tip pool contribution. As a result, Defendants illegally retained tips through the tip pooling arrangement. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

75.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

76.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to an invalid tip credit, and damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

78.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

80.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

81.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

82.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

83.     Defendants knowingly and willfully illegally retained tips and gratuities from Plaintiffs and Class Members.

84.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

85.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in

wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the proper compensation, including tips illegally withheld from Plaintiff and Class Members.

86.    Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff, as required by New York Labor Law § 195(1).

87.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff with every wage payment, as required by New York Labor Law § 195(3).

88.    Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and other Class Members all of the wages they were due (including overtime wages) when Defendants knew or should have known such was due, and its failure to provide Plaintiff and other Class Members with accurate wage statements.

89.    Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their damages for unpaid wages due to an invalid tip credit, unpaid tips due to tip retention, unpaid spread of hours premiums, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs, pursuant to the New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court assume jurisdiction herein and thereafter grant the following relief:

    a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

    b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum and overtime wages, due under the NYLL;

d.  An award of unpaid minimum and overtime wages due to an invalid tip credit, due under the FLSA and the NYLL;

e.  An award equal to the amount of the improperly retained tips withheld by Defendants, due under the FLSA and the NYLL;

f.  An award of unpaid spread of hours premiums, due under the NYLL;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, proper tips due to illegal retention of gratuities pursuant to the FLSA;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, proper tips due to illegal retention of gratuities pursuant to the NYLL;

k.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

l.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and experts' fees;

m.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 13, 2025                                      Respectfully submitted,

By:    /s/_____
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*